# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

PATRICIA WASHINGTON,         )
        Plaintiff,           )
                                   )
       v.                  )     CAUSE NO.: 2:12-CV-312-JEM
                                   )
CAROLYN W. COLVIN, Acting Commissioner  )
of the Social Security Administration,    )
        Defendant.         )

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Patricia Washington on August 6, 2012, and a Plaintiff's Memorandum in Support of Reversing the Decision of the Commissioner [DE 16], filed by Plaintiff on February 8, 2013. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On May 17, 2013, the Commissioner filed a response, and on May 31, 2013, Plaintiff filed a reply. For the following reasons, the Court grants Plaintiff's request for remand.

## PROCEDURAL BACKGROUND

On September 28, 2009, Plaintiff filed an application for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") with the U.S. Social Security Administration ("SSA") alleging that she became disabled on October 28, 2009. Plaintiff's application was denied initially and upon reconsideration. On March 22, 2011, Kathleen Mucerino held a video hearing at which Plaintiff, with an attorney representative, and a vocational expert ("VE") testified. On April 1, 2011, the ALJ issued a decision finding that Plaintiff was not disabled.

The ALJ made the following findings under the required five-step analysis:

1.     The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

2. The claimant has not engaged in substantial gainful activity since her alleged onset date of October 28, 2008. (20 CFR 404.1571 *et seq*. and 20 CFR 416.971 *et seq*).

3. The claimant has severe impairments: disorders of back, affective disorder, personality disorder, and bulimia (20 CFR 404.1250(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meet or medically equal any of the listed impairments in 20 CFR 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

5. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). She must use a cane to balance when walking and must avoid concentrated exposure to wetness or hazards like machinery, unprotected heights, or wet or uneven surfaces. She can occasionally climb ramps or stairs but never ladders, ropes, or scaffolds; cannot stoop, kneel, or crawl; and can occasionally balance or crouch. She can only understand, remember, and consistently perform simple, routine, unskilled work. She must work in a socially isolated environment with no contact with the general public and only necessary conduct with co-workers and supervisors.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was 39 years old, defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (see SSR 82-41 and 20 CFR 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could perform (20 CFR 404.1569, 404.1569(a), 416.969, ad 416.969(a)).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from October 28, 2008, the alleged onset date, through the date of the ALJ's decision (20 CFR 404.1520(g) and 416.920(g)).

On June 12, 2012, the Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## FACTS

### A.     Background

Plaintiff was 41 years old on the date of the ALJ's decision. She had completed two years of college education and had a certified nursing assistant license. She had past work as a certified nursing assistant and a production operator.

### B.     Medical Evidence

Plaintiff injured her back on October 28, 2008. She was treated by orthopedic surgeon Mark K. Chang, M.D., who diagnosed Plaintiff with severe disc degeneration at the L5-S1 level with grade I isthmic spondylolisthesis and bilateral forminal stenosis. An MRI identified degenerative joint and disk disease with mild to moderate bilateral foraminal narrowing. On March 11, 2009, Plaintiff underwent back surgery, including a L-S1 laminectomy, discectomy, interbody fusion with spacer and synthetic bone grafting, posterolateral fusion with synthetic bone grating and instrumentation. After the surgery Dr. Chang recommended that Plaintiff receive physical therapy, but it was not covered by her insurance and she was unable to afford it.

On February 7, 2009, prior to Plaintiff's back surgery, Dr. Sean Salehi, an insurance consultant, examined Plaintiff and concluded that her back injury was a temporary exacerbation of a preexisting condition and said that she was restricted to light work lifting no more than twenty pounds.

On September 5, 2009, VA physician John Giovinco, M.D., examined Plaintiff. He noted that she had not had significant relief since surgery and uses a back brace and a cane. He diagnoses severe lumbosacral strain with L5 spondylolysis status post posterior fusion of L5-S1 with clinical evidence of radiculopathy in the L5-S1 distribution, worse on her left side.

On September 24, 2009, Dr. Chang noted that it was unlikely that Plaintiff was going to be able to work even with light duty restrictions because of her chronic back pain, and described a number of restrictions to any work ability, including limitation to only sedentary work inside, with ability to sit and stand as needed and to schedule physical therapy and doctor appointments around work hours; lifting limited to five pounds; minimal bending, twisting, squatting, and stooping; no pushing or pulling; no crawling, climbing, running, jumping, walking on uneven surfaces, or operating heavy machinery; and no overhead lifting or pulling down objects.

On April 8, 2010, Dr. Chang indicated that Plaintiff was unlikely to experience any more neurologic improvement and that she was permanently disabled. On July 5, 2010, he completed an RFC assessment noting that Plaintiff could sit or stand for no more than fifteen minutes at a time, that she needed to walk around for about five minutes approximately every twenty minutes, and that she could sit for less than two hours total and stand/walk for less than two hours total in an eight hour workday. He also said that she could never twist, stoop, crouch, or climb ladders or stairs, and could only rarely lift up to ten pounds.

On September 7, 2010, Dr. Chang reported that Plaintiff never recovered from her back injury to the point where she could return to work and had plateaued in recovery by September 2009. On March 15, 2011, Dr. Chang again wrote that Plaintiff was totally and permanently disabled due to L5 radiculopathy.

**C.     Mental Health Evidence**

Plaintiff has a history of bipolar disorder, affective disorder, personality disorder, trichitillomania, depression, and bulimia. Psychiatrist Constance Philipps, M.D., began treating Plaintiff on March 28, 2008. In June 2010 she completed a Mental Impairment Questionnaire reporting that she had seen Plaintiff every one to three months. Dr. Philipps indicated that Plaintiff would not be able to meet competitive standards for remembering work-like procedures; to maintain regular, punctual attendance; to complete a normal workday and workweek without interruptions from her psychologically-based symptoms; to perform at a consistent pace; or to deal with normal work stress. Dr. Philipps noted that Plaintiff experienced moderate restrictions in activities of daily living in that she did not groom regularly with reminders, moderate difficulties in social functioning, marked difficulties in maintaining concentration, persistence, or pace, and had experienced four or more episodes of decompensation, each of at least two weeks duration, within a twelve month period. She anticipated that Plaintiff would miss more than four days a month due to impairments or treatment.

**C.     Vocational Expert Testimony**

At the Administrative Hearing, Grace Gianforte testified as a neutral vocational expert. The ALJ presented a hypothetical scenario that reflected Plaintiff's RFC. In response, the VE testified that there was work available to a person with those limitations in the regional economy.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate her analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent her from doing her previous work, but considering her age, education, and work experience, it must also prevent her from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's RFC, age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite [his] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) (citing SSR 96-8p, 1996 WL 374184 (July 2, 1996); 20 C.F.R. § 404.1545(a)) (other citations omitted). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

**ANALYSIS**

**A.      Treating Physicians**

Plaintiff argues that the ALJ did not properly evaluate the medical and mental health opinions in the record. The Commissioner argues that the ALJ's findings are supported by substantial evidence.

The RFC is an assessment of what work-related activities the claimant can perform despite her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *see also* 20 C.F.R. §§ 404.1545(a)(1); 416.1545(a)(1). In evaluating a claimant's RFC, an ALJ is expected to take into consideration all of the relevant evidence, including both medical and non-medical evidence. *See* 20 C.F.R. §§ 404.1545(a)(3); 416.945(a)(3). According to SSA regulations:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p at *7. Although an ALJ is not required to discuss every piece of evidence, he must consider all of the evidence that is relevant to the disability determination and provide enough analysis in his decision to permit meaningful judicial review. *Clifford*, 227 F.3d at 870; *Young,* 362 F.3d at 1002. In other words, the ALJ must build an "accurate and logical bridge from the evidence to his conclusion." *Scott*, 297 F.3d at 595 (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)).

Plaintiff first argues that the ALJ erred in rejecting the opinion of Dr. Philipps, Plaintiff's treating psychiatrist. The ALJ stated that the opinion was inconsistent with the medical record, but, Plaintiff argues, she does not point to any other evidence that she relies upon. The Commissioner argues that the ALJ relied on the psychiatric review completed by Dr. Ken Lovko, Ph.D., who reviewed Plaintiff's file for the Agency.

Plaintiff also argues that the ALJ erred in giving little weight to treating physician Dr. Mark Chang, Plaintiff's orthopedic surgeon. He stated that Plaintiff could not return to her prior job or even a light duty job because of her ongoing back problems. Plaintiff argues that the ALJ stated that Dr. Chang's opinions were inconsistent with the record, but did not identify any contrary evidence. The Commissioner argues that the ALJ's decision is largely consistent with Dr. Chang's opinion.

"A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Gudgel*, 345 F.3d at 470 (citing 20 C.F.R. § 404.1527(d)(2)); *see also Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). Being "not inconsistent" does not require that opinion be supported directly by all of the other evidence "as long as there is no other substantial evidence in the case record that contradicts or conflicts with the opinion." SSR 96-2p, 1996 WL 374188 at *3. To be "substantial," conflicting evidence "need only be such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (citing *Richardson v. Perales*, 402 U.S. 389 (1971)); *see also Schmidt*, 395 F.3d at 744.

If the ALJ declines to give a treating source's opinion controlling weight, she must still

determine what weight to give it according to the following factors: the length, nature, and extent of the physician's treatment relationship with the claimant; whether the physician's opinions were sufficiently supported; how consistent the opinion is with the record as a whole; whether the physician specializes in the medical conditions at issue; and other factors, such as the amount of understanding of the disability programs and their evidentiary requirements or the extent to which an acceptable medical source is familiar with other information in the claimant's case. 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), (c)(3)-(6); *see also Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008). "If the ALJ discounts the [treating] physician's opinion after considering these factors, [the Court] must allow that decision to stand so long as the ALJ 'minimally articulated' [her] reasons." *Elder,* 529 F.3d at 415 (quoting *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008)); *see also Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) ("[W]henever an ALJ does reject a treating source's opinion, a sound explanation must be given for that decision."); *Schmidt*, 496 F.3d at 842 ("An ALJ thus may discount a treating physician's medical opinion if it . . . 'is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as he minimally articulates his reasons for crediting or rejecting evidence of disability.'") (quoting *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004)).

In this case, the ALJ discounted the opinions of the treating psychiatrist and the treating orthopedic surgeon on the basis that neither were consistent with the record.

1. *Psychiatrist Dr. Philipps*

The ALJ stated that she gave little weight to Dr. Philipps's opinion that Plaintiff suffered marked limitation in concentration, persistence and pace and that she suffered four or more episodes of decompensation, finding those opinions inconsistent with the medical record.

Plaintiff argues that instead of relying on Dr. Philipps's opinion about Plaintiff's mental impairments, the ALJ gave great weight to the opinion of a non-treating state agency psychologist. The Court's review of the ALJ's opinion comes to a different conclusion: the ALJ stated, "I give the State agency psychologists's opinion that the claimant's mental impairment is not severe and the treating therapist's (Dr. Phillips) [sic] opinion of marked limitation in concentration, persistence, or pace and 4 or more episodes of decompensation little weight since these opinions are inconsistent with the medical record." AR 19. In other words, the ALJ did not rely on the reviewing psychologist's opinion rather than the treating psychiatrist's opinion.

Instead, the ALJ described Plaintiff's long treatment for mental impairments, including diagnoses of and treatment for bipolar disorder and depression. After discussing a number of reasons for finding Plaintiff less than credible, the ALJ then listed selected portions of the medical records that demonstrated physical and mental ability and improvement, without comment or context. For example, the ALJ wrote, "On September 5, 2009, there was normal gait, intact judgment, and normal thought process. On December 28, 2009, physical examination showed negative straight leg raise, normal gait, normal mood, affect, insight, and judgment, and normal sensation." AR 18. The ALJ did not include any indication of how these short snapshots counteracted the significant evidence of mental impairments, or even indicate what physician made these assessments.

The Seventh Circuit has warned against "cherry-picking" medical or mental health evidence, particularly because "a person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about her overall condition." *Punzio*, 630 F.3d at 710. In that case, the Seventh Circuit said that "[t]he ALJ ought to have

analyzed whether [the treating psychiatrist]'s mental-residual-functional-capacity questionnaire was consistent with her treatment notes as a whole. Even if we accept the [single] treatment note as evidence that [the plaintiff] enjoys a few 'good days,' that evidence still offers no support for the ALJ's finding that her mental illness does not prevent her from holding a job." *Id.*

As the Seventh Circuit Court of Appeals has explained, "[t]he very nature of bipolar disorder is that people with the disease experience fluctuations in their symptoms, so any single notation that a patient is feeling better or has had a 'good day' does not imply that the condition has been treated." *Scott v. Astrue*, 647 F.3d 734, 739-40 (7th Cir. 2011)*; see also Punzio*, 630 F.3d at 710 ("[A] person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about her overall condition."); *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) ("[S]ymptoms that 'wax and wane' are not inconsistent with a diagnosis of recurrent, major depression. 'A person who has a chronic disease, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better days and worse days.'") (quoting *Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008)).

The ALJ also discounted the severity of Plaintiff's mental health problems because of her noncompliance with treatment, neglecting to recognize that failure to comply with treatment may be a sign of mental disorder rather than a reason to discount its severity. As the Seventh Circuit has emphasized, "mental illness . . . may prevent the sufferer from taking her prescribed medicines or otherwise submitting to treatment." *Kangail v. Barnhart*, 454 F.3d 627, 630 (7th Cir. 2006); *see also Martinez v. Astrue*, 630 F.3d 693, 697 (7th Cir. 2011) ("[P]eople with serious psychiatric problems are often incapable of taking their prescribed medications consistently."); *Jelinek v. Astrue*, 662 F.3d 805, 814 (7th Cir. 2011) (listing cases).

In addition, when considering non-compliance with treatment as a factor in determining whether a claimant's statements regarding her symptoms are credible, an ALJ is also required make a determination about whether non-compliance with treatment is justified and develop the record accordingly. *See* SSR 96-7p, 1996 WL 374186 at *7 (July 2, 1996); *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) ("Although a history of sporadic treatment or the failure to follow a treatment plan can undermine a claimant's credibility, an ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference."); *Craft*, 539 F.3d at 679 ("[T]he ALJ 'must not draw any inferences' about a claimant's condition from this failure unless the ALJ has explored the claimant's explanations as to the lack of medical care.") (quoting SSR 96-7p).

The ALJ did not ask Plaintiff about her compliance with treatment at the hearing nor does she address the reasons for noncompliance that appear in the record, such as lack of insurance coverage. *See, e.g.,* AR 798-9. The ALJ did note Plaintiff's drug use and failure to "aggressively attempt[] to cease use of substances" as reasons to find her less than credible. AR 17. However, as the Seventh Circuit Court of Appeals has described, "bipolar disorder can precipitate substance abuse, for example as a means by which the sufferer tries to alleviate her symptoms." *Kangail*, 454 F.3d at 629 (citing peer-reviewed psychiatric journal articles). Furthermore, "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Avery v. Astrue*, No. 11 C 7471, 2012 WL 6692120, at * 9 (N.D. Ill. Dec. 19, 2012) (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir.1996); *Blankenship v. Bowen*, 874 F .2d 1116, 1124 (6th Cir.1989)).

Plaintiff also argues that the ALJ erred in discounting Dr. Philipps's opinion that Plaintiff

suffered four or more episodes of decompensation, and that this error was particularly significant because, Plaintiff argues, giving controlling weight to treating psychiatrist Dr. Philipps would lead to a finding that Plaintiff satisfied the listing for Bipolar Disorder, Listing 12.04, at Step Three.

At step three, the ALJ must determine whether the claimant's impairments meet an impairment listed in the appendix to the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). An individual suffering from an impairment that meets the description of a listing or its equivalent is conclusively presumed disabled. *See Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). The claimant "has the burden of showing that his impairments meet a listing, and he must show that his impairments satisfy all of the various criteria specified in the listing." *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006); *see also Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria.") (emphasis in original); *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. Ind. 2012) (claimant "had the burden of establishing that he met all of the requirements of a listed impairment"). An impairment that manifests only some of the criteria will not qualify, regardless of its severity. *See Sullivan*, 493 U.S. at 530. "Whether a claimant's impairment equals a listing is a medical judgment." *Barnett*, 381 F.3d at 670 (citing 20 C.F.R. § 404.1526(b)).

In order for Plaintiff to meet the requirements for Listing 12.04, she must show "marked limitations in either two categories of functional limitation or one category coupled with evidence of three or more episodes of decompensation. Such episodes may include incidents like hospitalizations, which signal the need for a different treatment, or they 'may be inferred

from medical records showing a significant alteration in medication.'" *Phillips v. Astrue*, 413 F. App'x 878, 886 (7th Cir. 2010) (quoting 20 C.F.R. Pt. 404 Subpt P., App. 1, § 12.00) (citing *Larson*, 615 F.3d at 750). In essence, "decompensation is a temporary increase in symptoms." *Larson*, 615 F.3d at 750 (citing *Zabala v. Astrue*, 595 F.3d 402, 405 (2d Cir. 2010); *Kohler v. Astrue*, 546 F.3d 260, 266 n. 5 (2d Cir. 2008)).

Plaintiff argues that the ALJ's misapprehension of the criteria for defining decompensation meant that she failed to properly weigh whether Plaintiff met the Listing. Plaintiff argues that the record clearly reflects that she did suffer three or more episodes of decompensation within 12 months, each of which were at least two weeks long, as required by the Listing. 20 CFR Pt. 404 Subpt P., App. 1, § 12.00 ("The term repeated episodes of decompensation, each of extended duration in these listings means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.").

The Court will not at this stage determine that Plaintiff does or does not definitively meet Listing 12.04, but is concerned that the ALJ misunderstood what constitutes "decompensation" for the purposes of this Listing. This matter is being remanded for other reasons, and on remand, the ALJ is directed to fully address Plaintiff's alleged episodes of decompensation and, if she concludes that Plaintiff still does not meet the Listing, to fully explain what medical evidence in the record leads her to that conclusion.

2. *Orthopedic Surgeon Dr. Chang*

Plaintiff argues that the ALJ also cherry-picked evidence to support her decision to give little weight to Dr. Chang's opinion. She lists numerous signs and symptoms of Plaintiff's ongoing back pain and weakness that she describes as consistent with Dr. Chang's opinion and

directly contradicting the ALJ's opinion, but which the ALJ did not discuss. The Commissioner admits that "the ALJ could have provided a more thorough explanation of her analysis of Dr. Chang's opinion," but emphasizes that the ALJ's RFC is generally consistent with Dr. Chang's opinion of Plaintiff's abilities. As described above, a treating physician's opinion regarding the nature and severity of a claimant's impairment must be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2); SSR 96-2p; *Schmidt*, 496 F.3d at 842.

Dr. Chang specifically stated that Plaintiff could not return to work and was permanently disabled. The ALJ is correct that the ultimate disability finding is reserved to the Commissioner; however, an ALJ may not simply ignore an opinion that addresses a plaintiff's ability to work, but must "evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record." SSR 96-5p, 1996 WL 374183, at *3, 5 (July 2, 1996); *see also Hamilton v. Colvin*, 525 F. App'x 433, 439 (7th Cir. 2013) ("While the ALJ is right that the ultimate question of disability is reserved to the Commissioner, a treating physician's opinion that a claimant is disabled 'must not be disregarded.'") (quoting SSR 96–5p) (citing 20 C.F.R. § 416.927(e)(2)); *Roddy*, 705 F.3d at 636 (explaining that ALJ must not ignore treating physician's opinion that plaintiff "could not handle a full-time job").

As with Plaintiff's mental health, the ALJ listed a series of positive physical reports completely out of context but never specifically addresses Dr. Chang's findings or how they are supported by or inconsistent with other medical records. The ALJ also failed to explain what weight was given to Dr. Chang's findings other than his conclusion of disability and did not

evaluate Dr. Chang's opinion according to the factors in the regulations. The ALJ stated that she gave significant weight in part to the opinion of examining doctor Sean Salehi, but did not explain how it was consistent with the other medical evidence in the record or evaluate the opinion in accordance with the factors listed in the Regulations. As Plaintiff argues, the opinion was also given in 2009, prior to Plaintiff's back surgery, and the physician was not a treating physician. It is not apparent why the ALJ gave more weight to this single report than to the long-term treatment notes of Dr. Chang.

Although medical evidence "may be discounted if it is internally inconsistent or inconsistent with other evidence," *Knight*, 55 F.3d at 314 (citing 20 C.F.R. § 404.1527(c)) (other citations omitted), the ALJ "must provide a 'logical bridge' between the evidence and his conclusions." *O'Connor-Spinner*, 627 F.3d at 618. She did not do so here. On remand, the ALJ is directed to fully consider each of the Plaintiff's alleged impairments and provide a logical bridge from the evidence to his conclusion, including a description of the medical and mental health evidence on which she bases her determination and an explanation of how she weighed the opinions of Plaintiff's treating and examining healthcare providers.

Plaintiff also argues that the ALJ failed to explain how she considered the limitations caused by Plaintiff's combinations of impairments. "Although [] impairments may not on their own be disabling, that would only justify discounting their severity, not ignoring them altogether. Moreover, . . . an ALJ must consider the combined effects of all of the claimant's impairments, even those that would not be considered severe in isolation." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *see also Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008) ("[A]n ALJ is required to consider the aggregate effects of a claimant's impairments, including

impairments that, in isolation, are not severe.") (citing 20 C.F.R. § 404.1523; *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003)). The case is being remanded for the ALJ to fully consider Plaintiff's medical records; on remand, the ALJ is also directed to thoroughly address the aggregate effects of Plaintiff's impairments.

**B.    Credibility**

The Court is also concerned with the ALJ's credibility assessment. In making a credibility determination, Social Security Ruling 96–7p states that the ALJ must consider the record as a whole, including objective medical evidence, the claimant's statement about symptoms, any statements or other information provided by treating or examining physicians and other persons about the conditions and how they affect the claimant, and any other relevant evidence. *See* SSR 96-7p. An ALJ is not required to give full credit to every statement of pain made by the claimant or to find a disability each time a claimant states he or she is unable to work. *See Rucker v. Chater*, 92 F.3d 492, 496 (7th Cir. 1996). However, Ruling 96-7p provides that a claimant's statements regarding symptoms or the effect of symptoms on his ability to work "may not be disregarded solely because they are not substantiated by objective evidence." SSR 96-7p at *6. Although an ALJ's credibility determination is entitled to substantial deference by a reviewing court and will not be overturned unless the claimant can show that the finding is "patently wrong," *Prochaska*, 454 F.3d at 738, "but an administrative agency's decision cannot be upheld when the reasoning process employed by the decision maker exhibits deep logical flaws." *Carradine v. Barnhart*, 360 F.3d 751, 756 (7th Cir. 2004)

In addition to the concerns mentioned above about the ALJ's failure to address possible explanations behind Plaintiff's noncompliance with treatment, the ALJ also disregarded

Plaintiff's statements about her own pain, stating that Plaintiff "was able to participate in the hearing without any overt pain behavior." The transcript of the hearing suggests that this is not entirely accurate. The ALJ asked Plaintiff about what kind of pain she was experiencing, and Plaintiff indicated that she was about an eight. The ALJ asked, "And that is your legs?" and Plaintiff responded, "Yes. That's why I keep standing up." AR 66.

The ALJ also referred to the statement of Plaintiff's daughter that she had difficulties getting along with others, but found that less than believable, in part, because Plaintiff talked to her mother on the phone daily. AR 13. In fact, Plaintiff does not have a daughter, and it was her mother who filled out the report referred to by the ALJ. AR 195-97. This misidentification raises concerns that the ALJ did not thoroughly and accurately review the record. The ALJ discounted the report that Plaintiff has trouble getting along with others based on what she assumed was the daughter's report of Plaintiff getting along well with her own mother, and used that to discount the presumed daughter's report. If the ALJ was aware that Plaintiff's mother was reporting on her own relationship with her daughter, the ALJ may not have concluded that it was internally inconsistent, and might have given it more weight.

The ALJ also discredited Plaintiff's statements that she sometimes does not get out of bed 4-5 days a week on the basis of Plaintiff's testimony at the hearing that she does not get out of bed 3 days per week. Even assuming that the lower number is correct, and inability to get out of bed any number of days per week is inconsistent with the ability to maintain full time employment. Similarly, the ALJ writes that Plaintiff attended college in 2009, but does not mention that Plaintiff dropped all of her classes in 2010 and was not enrolled in school in 2011. AR 41-42.

The ALJ noted that Plaintiff is able to read, watch television, do word find puzzles, wash dishes, clean, do laundry, and drive a car, and that she plays cards and talks with friends once or twice per week. To the extent that the ALJ is implying that these meager activities indicate an ability to work, the Court notes that the Seventh Circuit Court of Appeals has repeatedly criticized credibility determinations that equate a plaintiff's ability to take care of his personal hygiene, children, or household chores with the ability to work. *See, e.g., Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012); *Punzio*, 630 F.3d at 712; *Zurawski*, 245 F.3d at 887; *Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2006)

The Court does not find that the credibility assessment is patently wrong, but because the case is being remanded on other grounds, the Court suggests that on remand, the ALJ fully consider Plaintiff's testimony and the entirety of the record in compliance with the applicable directives.

**CONCLUSION**

Based on the foregoing, the Court hereby **GRANTS** the relief requested in Plaintiff's Memorandum in Support of Reversing the Decision of the Commissioner [DE 16] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 28th day of March, 2014.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc:     All counsel of record